**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:25-cv-62172-LEIBOWITZ/AUGUSTIN-BIRCH**

**SHANGHAI TENCENT PENGUIN FILM CULTURE MEDIA CO., LTD, *et al.*,**

*Plaintiffs*,

*v.*

**OLEVOD,**

*Defendant.*
_______________________________________/

# ORDER

**THIS CAUSE** is before the Court upon the Report and Recommendation to Grant Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 31] (the "R&R"), filed on June 30, 2026. Plaintiffs Shanghai Tencent Penguin Film Culture Media Co., Ltd., Shenzhen Tencent Computer System Co., Ltd., Tencent Technology (Beijing) Co., Ltd., and Tencent Holdings Limited (collectively "Plaintiffs" or "Tencent") timely filed objections to the R&R [ECF No. 32], Defendant Olevod—whose real name, their counsel tells us, is Jiayi Network Technology SL ("Defendant" or "Jiayi")—responded [ECF No. 33], and Tencent filed a reply [ECF No. 34]. After careful consideration, the Court respectfully **REJECTS** the R&R **[ECF No. 31]** and **DENIES** the Motion to Dismiss **[ECF No. 25]**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Tencent is a Chinese conglomerate that produces, owns the rights to, and distributes wildly popular Chinese-language movies and television shows. [ECF No. 1 ("Compl.") ¶¶ 24–25, 30–39]. All the named Plaintiffs have their principal place of business in China, and all are Chinese corporations except Tencent Holdings Limited, which is a Cayman entity. [*Id.* ¶¶ 22–25]. Jiayi "is a

Spanish corporation with its principal place of business and sole office in Madrid, Spain." [ECF No. 25 at 2].

In the complaint, Tencent accuses Jiayi of "high-volume infringement" of its copyrighted works and trademarks. [Compl. ¶ 7; *see id.* at 44–82 (listing Tencent's works and trademarks)]. Tencent says Jiayi offers pirated versions of its content on the streaming websites OLEVOD.COM and OLEVOD.TV, which host ads for unsavory products Tencent wants nothing to do with—things like "gambling, pornography," and "counterfeit academic diplomas." [*Id.* ¶¶ 6–9; *see id.* ¶¶ 81–86]. Tencent brings claims for violations of the Copyright Act (counts 1–3), trademark infringement under the Lanham Act (count 4), common law trademark infringement (count 5), false designation of origin under the Lanham Act (count 6), and common law unfair competition (count 7). [*Id.* at 26–37]. Tencent seeks money damages and sweeping injunctive relief, including an order requiring that Jiayi assign the rights to its websites to Tencent and an order enjoining banks and internet service providers from doing business with Jiayi. [*Id.* at 37–40].

Jiayi moved to dismiss the complaint for lack of personal jurisdiction on January 20, 2026. [ECF No. 25]. In keeping with the Eleventh Circuit's burden-shifting framework for such motions,[1] Jiayi proffered a declaration from its "authorized legal representative" Xuezhu Chen, which challenged the jurisdictional allegations in Tencent's complaint. [ECF No. 25-1 ("Chen Declaration" or "Chen Decl.") ¶ 1]. Chen averred that Jiayi "never targeted solicitations or advertisings toward customers, users, or business partners in the State of Florida or elsewhere in the U.S." [*Id.* ¶¶ 12–13; *see id.* ¶¶ 26–31, 41–45 (similar)]. Instead, Jiayi's websites are "designed to serve Chinese-language speakers globally, without regard to the specific country from which users access our services." [*Id.* ¶ 18; *see id.* ¶¶ 16–20]. Chen also averred that Jiayi is a Spanish company with its principal place of business in

---

[1] *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

Madrid, [*id.* ¶¶ 4–5]; that it has never had any employees or offices in the United States, [*id.* ¶¶ 6–8]; that it "has never entered into any contracts or business agreements with any individual or entity located in the State of Florida," [*id.* ¶ 11]; and that "[t]he allegedly infringing content referenced in the Complaint is stored on servers physically located in Europe," [*id.* ¶ 22].

Tencent hit back by arguing the complaint "plausibly alleges that Defendant operates unauthorized, revenue-generating streaming services that target Florida users and divert Florida viewers and revenue from Plaintiffs' authorized services." [ECF No. 26 at 2]. It pointed to its jurisdictional allegations, which state that OLEVOD.COM and OLEVOD.TV are "accessible to United States consumers, including in Florida," and harm Tencent "within this District by diverting customers" away from Tencent's legitimate streaming services and by "directly and unfairly competing with Tencent's economic interests in the State of Florida." [*Id.* ¶¶ 14, 20; *see* ECF No. 1-35 ("Buckner Declaration" or "Buckner Decl.") ¶ 3 (averring that both OLEVOD.COM and OLEVOD.TV were accessed from an IP address within this District)]. Tencent argued that the Chen Declaration Jiayi proffered failed to rebut those allegations. [*Id.* at 11]. Tencent also proffered a rebuttal to the Chen Declaration from its lawyer, Chuantong "Leon" Wang. [ECF No. 26-1 ("Wang Declaration" or "Wang Decl.")].[2] The Wang Declaration cited evidence that suggested Jiayi accepts payment in U.S. Dollars via the U.S. service PayPal, [*id.* ¶¶ 3–5]; that Jiayi "offers advertising placement services on its websites to U.S. markets," [*id.* ¶ 6]; that the IP addresses associated with OLEVOD.COM and OLEVOD.TV are registered to an entity in Denver and managed by an entity in Destin, [*id.* ¶¶ 7–12]; and that U.S.-based consumers, including at least one from Florida, engaged with the interactive features on Jiayi's websites and with its Facebook posts, [*id.* ¶¶ 13–23].

[2] "Where . . . the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction . . . ." *Stubbs*, 447 F.3d at 1360 (11th Cir. 2006) (citing *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

In reply, Jiayi proffered two more declarations: a supplemental declaration from Chen, [ECF No. 29-2 (the "Chen Supplemental Declaration" or "Chen Supp. Decl.")], and a declaration from Dr. Yuanhao Tian, [ECF No. 29-1 (the "Tian Declaration" or "Tian Decl.")]. The Chen Supplemental Declaration stated that the U.S.-based IP addresses mentioned in the Wang Declaration are actually run by a third party Jiayi contracts with, [Chen Decl. ¶¶ 4–6]; that all of Jiayi's "content, including the content that Plaintiffs claim is being infringed, is stored and maintained on servers located in Europe," [*id.* ¶ 9]; that fewer than twenty percent of payments to Jiayi are made via PayPal, [*id.* ¶ 10]; that the image Wang used to suggest Jiayi allows advertisers to target U.S. markets "is Simplified Chinese and does not indicate targeting specific to a geographic location," [*id.* ¶ 11]; and that Jiayi has not posted on its Facebook page since February 28, 2020, [*id.* ¶ 14]. Dr. Tian's declaration stated that the Destin address Wang cited in his declaration "appears to be a mail drop location for the entity 'FDC Servers' and does not appear to be a location where FDC Servers engages in any business related to data storage." [Tian Decl. ¶ 10].

The Court referred the motion to dismiss for a report and recommendation on May 7, 2026, [ECF No. 30], and Magistrate Judge Augustin-Birch issued the R&R on June 30, [ECF No. 31]. The R&R concluded that on the record before it, Tencent did not show personal jurisdiction was proper under Florida's long-arm statute or Rule 4(k)(2) of the Federal Rules of Civil Procedure, and separately, that exercising jurisdiction over Jiayi would violate the Due Process Clause of the Fourteenth Amendment. [*Id.* at 4–19]. The R&R recommended that the Court grant Jiayi's motion to dismiss and dismiss the complaint without prejudice. [*Id.* at 1]. It also denied Tencent's motion for jurisdictional discovery, which was embedded in its motion to dismiss briefing. [*Id.* at 19–20].

Tencent timely objected to the R&R on July 14, 2026, raising four objections. [ECF No. 32]. First, Tencent argues the R&R "required direct, title-specific proof that a Florida user viewed a Tencent work instead of applying the prima facie standard to Plaintiffs' allegations, supporting

evidence, and favorable reasonable inferences." [ECF No. 32 at 6]. Second, Tencent argues the R&R erred by "resolv[ing] disputed facts and inferences in Defendant's favor." [*Id.*]. Third, it argues the R&R improperly denied Tencent's request for jurisdictional discovery. [*Id.* at 11–12]. And fourth, it argues that the R&R erroneously rejected Tencent's in-the-alternative argument that jurisdiction over Jiayi is proper Rule 4(k)(2) if not Florida's long-arm statute. [*Id.* at 10–11].

## II. LEGAL STANDARDS

### A. Review of Report and Recommendation

When a magistrate judge's disposition has been properly objected to, a district court must review the disposition *de novo*. *See* Fed. R. Civ. P. 72(b)(3). A proper objection "identifie[s] specific findings set forth in the R&R and articulate[s] a legal ground for objection." *Leatherwood v. Anna's Linens Co.*, 384 F. App'x 853, 857 (11th Cir. 2010) (alterations added).

### B. Motion to Dismiss for Lack of Personal Jurisdiction

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court must dismiss an action against a defendant over which it cannot exercise personal jurisdiction. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). "A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the exercise is consistent with federal due process requirements." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008) (citations omitted).

When a "plaintiff seek[s] to establish personal jurisdiction over a nonresident defendant," he "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). If the plaintiff makes a prima facia case, the burden shifts to the defendant to "submit[] affidavits contrary to the allegations in the complaint." *Stubbs*, 447 F.3d at 1360 (citing *Meier*, 288 F.3d at 1269). If the defendant's affidavits contravene the

plaintiff's allegations, the burden "shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id.* (citing *Meier*, 288 F.3d at 1269). In deciding Rule 12(b)(2) motion to dismiss, the Court must accept as true all unchallenged facts in the complaint and consider the parties' affidavit evidence. *See AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1364 (11th Cir. 2021). If "the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id.* (citation omitted).

## III. DISCUSSION

After *de novo* review of the issues raised by Tencent's first two objections, the Court concludes that it has specific jurisdiction over Jiayi under Florida's long-arm statute and that its exercise of jurisdiction does not violate the Due Process Clause. Given those holdings, Tencent's third and fourth objections are overruled as moot.

Before we dive in, a little housekeeping. Tencent submitted a new declaration—which we'll call the Wang Objection Declaration—that cites evidence that in June 2026, OLEVOD.COM "drew monthly traffic of 123,400 visits from Florida users, which included 18,800 unique visitors from Florida, and that the total traffic from Florida is ranked No. 4 among all U.S. states, after California, Texas, and New York." [ECF No. 32-1 ("Wang Objection Declaration" or "Wang Objection Decl.") ¶ 2]. This Court, of course, has discretion to consider additional evidence in reviewing objections to a report and recommendation. *See* Fed. R. Civ. P. 72(b)(3); *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) (in reviewing report and recommendation, district judge "may also receive further evidence") (quoting 28 U.S.C. § 636(b)(1)). Jiayi argues the Court should decline to consider the Wang Objection Declaration because it was "held in reserve" by Tencent. [ECF No. 33 at 6–7]. It urges that "[p]ermitting a party to test its theory before the magistrate judge, absorb an adverse recommendation, and then supplement the record on objection would nullify the purpose of the

referral." [*Id.* at 7]. While parties are of course encouraged to raise all relevant argument and evidence before the magistrate judge, the Wang Objection Declaration is not an ace-in-the-hole. It does not raise any new arguments, and but adds support for the factual averments Tencent already made in the underlying papers. The Court will exercise its discretion and consider the Wang Objection Declaration as part of its *de novo* review.

**A. The Parties' Arguments**

At bottom, Tencent's argument is that the record before the Court establishes that personal jurisdiction over Jiayi is proper under Florida's long-arm statute, Section 48.193(1)(a)2., Florida Statutes, and the Due Process Clause. On the long-arm statute, Tencent argues it is "reasonable to infer" from the record "that numerous Florida users accessed and continue to access Plaintiffs' shows through Defendant's revenue-generating websites, causing customer diversion and competitive injury in Florida." [ECF No. 32 at 6]. It points to the R&R itself, which said "[i]f it were true that customers in Florida consume Plaintiffs' entertainment content that Defendant makes available without authorization, then, applying cases such as *Louis Vuitton*, Defendant's conduct likely would cause injury within Florida" sufficient to satisfy Florida's long-arm statute. [*Id.* at 3 (citing ECF No. 31 at 8–9)]. Tencent notes that Jiayi's Chen Declaration, which the R&R credited, "never denies that Defendant has Florida customers or sells subscriptions to Florida residents," meaning that issue is, "at most," "a factual conflict that must be resolved in Plaintiffs' favor." [*Id.* at 6–7 (internal citations and quotation marks omitted)]. On the Due Process Clause, Tencent briefly argues that "[e]xercising jurisdiction over Defendant comports with due process because Defendant purposefully availed itself of Florida's significant 'overseas Chinese' and Chinese-speaking." [*Id.* at 9–10].

Jiayi responds that the Chen Declaration "sets out specific, verifiable facts," and that the R&R "correctly held that the burden returned to Plaintiffs 'to produce evidence supporting jurisdiction,'" which Tencent never did. [ECF No. 33 at 3 (quoting *Louis Vuitton*, 736 F.3d at 1350)]. Jiayi submits

that the R&R "accepted Plaintiffs' evidence as true in every particular: that Plaintiffs offer subscriptions in U.S. markets; that an administrative entity managing two IP addresses used by Jiayi lists a Florida address (in fact, a post office box, []); and that a single Facebook user self-identifying as from Jacksonville 'liked' a post on Jiayi's Facebook page." [*Id.* at 4 (citing ECF No. 31 at 10)]. Taking these allegations as true, Jiayi says, the R&R rightly found them "legally insufficient to show that Jiayi caused injury in Florida" such that the long-arm statute is satisfied. [*Id.*; *see id.* at 4–6]. On the Due Process Clause, Jiayi argues Tencent cannot show that its claims "arise out of or relate to" Jiayi's contacts with Florida because "[t]he only Florida 'contacts' in the record are a third-party network administrator's post office box in Destin and a single Facebook 'like.'" [*Id.* at 8]. For similar reasons, Jiayi contends that Tencent cannot satisfy the "purposeful availment" prong under either the *Calder* effects test or the "minimum-contacts" test. [*Id.* at 8–9].

In reply, Tencent argues that the R&R and Jiayi misapprehend the Eleventh Circuit's burden-shifting framework. "When the defendant submits affidavit evidence, the burden shifts to the plaintiff—but only if those affidavits present specific facts rebutting jurisdiction, not 'conclusory assertions that the defendant is not subject to jurisdiction.'" [ECF No. 34 at 2 (quoting *Louis Vuitton*, 736 F.3d at 1350)]. Tencent concedes that "[o]n undisputed points—corporate structure and office location—the Chen Declaration provides specific facts, and the burden properly shifted." [*Id.* at 2]. But "on the disputed jurisdictional questions—whether Olevod targets U.S. users, whether it advertises, and whether its Florida access is incidental—the [Chen] Declaration offers bare legal conclusions and assertions that the documentary record contradicts," meaning the R&R erred by crediting them and finding the burden shifted back to Plaintiffs. [*Id.* at 2–5].

### B. The Facts Properly Before the Court

The Court's first task is to referee a fight between the parties' factual proffers. *See Posner*, 178 F.3d at 1214. The following facts emerge from the rubble and are accepted as true for purposes of this order.

- Tencent is a Chinese conglomerate that produces, owns the rights to, and distributes Chinese-language movies and television shows. [Compl. ¶¶ 24–25]. Tencent's content includes "some of the world's most popular international content," including shows that have garnered as many as 30 billion streams. [*Id.* ¶¶ 30–39]. All the named Plaintiffs have their principal place of business in China, and all are Chinese corporations except Tencent Holdings Limited, which is a Cayman entity. [*Id.* ¶¶ 22–25]. These allegations are uncontroverted, so the Court must accept them as true. *See Stubbs*, 447 F.3d at 1360.
- Jiayi "is a Spanish corporation with its principal place of business and sole office in Madrid, Spain." [Chen Decl. ¶ at 2]. Jiayi has never had any employees or offices in the United States and "has never entered into any contracts or business agreements with any individual or entity located in the State of Florida." [*Id.* ¶¶ 6–8, 11]. Tencent has offered no evidence to counter these averments, so the Court accepts them as true. *See AcryliCon*, 985 F.3d at 1364.
- Jiayi advertises, promotes, and distributes pirated Tencent content on the websites OLEVOD.COM and OLEVOD.TV. [Compl. ¶ 15; *see, e.g.*, *id.* ¶¶ 55–69 (detailing alleged infringement)]. These allegations are uncontroverted, so the Court must accept them as true. *See Stubbs*, 447 F.3d at 1360.
- OLEVOD.COM and OLEVOD.TV are accessible in Florida and have been accessed by consumers in Florida. [Compl. ¶¶ 14, 20; Buckner Decl. ¶ 3; Wang Objection Decl. ¶ 2]. These allegations and averments are uncontroverted, so the Court accepts them as true. *See Stubbs*, 447 F.3d at 1360; *AcryliCon*, 985 F.3d at 1364.

- Jiayi offers paid and free versions of OLEVOD.COM and OLEVOD.TV to U.S. consumers, including consumers in Florida. [Compl. ¶¶ 73–76; Wang Decl. ¶ 4; Buckner Decl. ¶ 3; Wang Objection Decl. ¶ 2]. Florida residents can purchase paid memberships that grant them access to Tencent content without advertisements. [Compl. ¶ 74; Wang Decl. ¶¶ 4–5]. They can also access free versions of the websites with ads—often for "unsavory" offerings like "pornography and gambling"—that are placed "in close proximity to Tencent's name and Tencent Holdings' marks." [Compl. ¶¶ 74, 85–86]. These allegations and averments are uncontroverted, so the Court accepts them as true. *See Stubbs*, 447 F.3d at 1360; *AcryliCon*, 985 F.3d at 1364.

- Jiayi "offers advertising placement services on its websites to U.S. markets," which includes Florida. [Wang Decl. ¶ 6]. The Court accepts this averment as true because Jiayi has not sufficiently controverted it. *See AcryliCon*, 985 F.3d at 1364. The Chen Supplemental Declaration states that the screenshot this averment is based on only "shows a general advertising service which has no indication of U.S. or any other geographic area specifically." [Chen Supp. Decl. ¶ 11]. But Chen concedes that "the advertisement would have been accessible in the U.S. and almost everywhere in the world." [*Id.*]. Chen has therefore not controverted Wang's point, which is that Jiayi sells ad placements that will be visible to Florida consumers.

- "[C]ustomers in this District and within the State of Florida" have been diverted from Tencent's legitimate streaming channels to OLEVOD.COM and OLEVOD.TV, costing Tencent revenue from would-be consumers. [Compl. ¶¶ 8, 20, 89]. These allegations are uncontroverted, so the Court must accept them as true. *See Stubbs*, 447 F.3d at 1360.

**C. Florida's Long-Arm Statute**

Step one is the long-arm statute. Tencent argues the Court has specific jurisdiction over Jiayi under Section 48.193(1)(a)2., Florida Statutes, which subjects a defendant to jurisdiction in a Florida court (and thus in this Court) "for any cause of action arising from" his "committing a tortious act within this state." § 48.793(1)(a)2., Fla. Stat. It is well established that a defendant's "physical presence in Florida is not required to obtain personal jurisdiction" under the "tortious act" provision. *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1222 (S.D. Fla. 2009); *see Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002). And the Eleventh Circuit has held that trademark claims like Tencent's can constitute "tortious acts" under the long-arm statute. *Louis Vuitton*, 736 F.3d 1339, 1353 (11th Cir. 2013); *see id.* at 1353 n.8 (citing cases). In *Lovelady*, the Eleventh Circuit held that "alleged infringement" on a website "occur[s] in Florida, " and thus satisfies the long-arm statute, "by virtue of the website's accessibility in Florida." *Lovelady*, 544 F.3d at 1283; *see Cross Match Techs., Inc. v. Crossresolve, LLC*, 2016 WL 3216541, at *4 (S.D. Fla. June 10, 2016) (Marra, J.) ("[T]he 'tortious act' provision of Florida's long-arm statute is satisfied where a website containing an infringing mark is accessible in Florida.") (citations omitted).

Jiayi argues for a stricter view of the "tortious act" provision. [ECF No. 33 at 4]. In Jiayi's telling, the *Lovelady* court did not just consider whether the website was accessible in Florida, but also the fact that "the plaintiff-victim of the infringement resided in Florida." [*Id.* at 5]. Jiayi points to the R&R, [*see id.*], which held the same, and concluded that to find a "defendant causes injury within Florida simply by operating a website that is accessible in Florida would . . . 'subject every company or individual that has a website anywhere in the world, and whose website can be accessed in Florida, to suit in Florida.'" [ECF No. 31 at 8 (quoting *PeopleShare, LLC v. Vogler*, 601 F. Supp. 3d 1276, 1282 (S.D. Fla. 2022))].

Respectfully, the Court reads *Lovelady*—and the long-arm statute—differently. When the *Lovelady* court addressed jurisdiction under the long-arm statute (not the Due Process Clause) it explicitly wrote that *where* the plaintiff was injured did not factor into its analysis. *Lovelady*, 544 F.3d at 1283 ("We need not decide whether trademark injury necessarily occurs where the owner of the mark resides . . . because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida."); *see also Louis Vuitton*, 736 F.3d at 1354 (noting "*Lovelady* relied on the website's *accessibility* in Florida for its long-arm statute analysis solely") (emphasis in original). To be sure, the fact that the *Lovelady* plaintiff was a Florida resident factored into that court's Due Process Clause analysis—but that is an entirely separate, and more difficult, bar to clear. *See Lovelady*, 544 F.3d at 1288 (in finding exercise of personal jurisdiction "comports with fair play and substantial justice," noting "the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy").

On Florida's long-arm statute, *Lovelady*'s holding was simply that "the alleged infringement" giving rise to jurisdiction occurred in Florida because the infringing content was accessible on a website in Florida. *Id.* at 1283. Importantly, this reading of the statute is consistent with the way the Florida Supreme Court has interpreted Florida's "tortious act" provision. *See Stubbs*, 447 F.3d at 1361 ("Because the long-arm statute is governed by Florida law, we are required to construe it as would the Florida Supreme Court."); *cf. Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214–16 (Fla. 2010) ("Once the allegedly defamatory material is published in Florida, [the defendant] has committed the tortious act of defamation within Florida for purposes of Florida's long-arm statute.").

Tencent clears the long-arm statute's hurdle with ease. It is undisputed that Jiayi advertises, promotes, and distributes pirated Tencent content on the websites OLEVOD.COM and OLEVOD.TV, and that those websites are accessible in Florida and have been accessed by consumers

in Florida. [Compl. ¶ 14–15, 20; Buckner Decl. ¶ 3; Wang Objection Decl. ¶ 2]. Those facts are more than enough, under the "tortious act" provision of Florida's long-arm statute, to confer specific jurisdiction on this Court. *See Lovelady*, 544 F.3d at 1283; *Cross Match Techs.*, 2016 WL 3216541, at *4 ("Because Cross Match establishes that CrossResolve maintains a website accessible in Florida that displays the allegedly infringing mark, Cross Match makes out a prima facie case of personal jurisdiction under the long-arm statute.").

**D. Due Process**

Next, the Due Process Clause. The Eleventh Circuit has prescribed a three-part test to determine whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause. *Louis Vuitton*, 736 F.3d at 1355. The Court must ask

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quotation marks and citation omitted).

1. Prong One: "Arising Out of" or Relatedness

"[A] fundamental element of the specific jurisdiction calculus is that plaintiff's claim must arise out of or relate to at least one of the defendant's contacts with the forum."' *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). The Court's inquiry "must focus on the direct causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton*, 736 F.3d at 1355–56 (citations omitted).

The Court finds Tencent's claims "arise out of or relate to" Jiayi's contacts with Florida. *Id.* at 1355–56. The record shows that Jiayi profits off pirated Tencent content in Florida in at least two ways: (1) it sells advertisements, visible to Florida consumers, that are placed in "close proximity" to pirated Tencent content; and (2) it sells paid subscriptions to U.S. consumers, including Florida consumers, that grant ad-free access to pirated Tencent content. [Compl. ¶¶ 73–76, 85–86; Wang Decl. ¶¶ 4, 6]. Jiayi has not rebutted these allegations. Nor has it denied that Florida consumers have accessed its websites, [Compl. ¶¶ 14, 20; Buckner Decl. ¶ 3; Wang Objection Decl. ¶ 2], or that "customers in this District and within the State of Florida" have been diverted away from Tencent's legitimate streaming channels and toward Jiayi's websites in order to access Tencent content, [Compl. ¶ 20]. Like in *Louis Vuitton*, Tencent's trademark claims arise from the fact that Jiayi has built a business distributing and selling pirated Tencent content to Florida consumers, so the first prong is "easily satisfied." 736 F.3d at 1356.

2. <u>Prong Two: Purposeful Availment</u>

In intentional tort cases, courts assess the purposeful availment prong using two independent inquiries: the "effects test," *see Calder v. Jones*, 465 U.S. 783, 789 (1984), or the traditional minimum contacts test, *see Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). The Court will apply the latter test to this trademark case. *See Louis Vuitton*, 736 F.3d at 1356 ("Circuit courts have applied the traditional minimum contacts test for purposeful availment analysis in lieu of, or in addition to, the 'effects test' in cases involving trademark-related intentional torts.") (citations omitted).

The traditional minimum contacts test requires the Court to assess the defendant's "contacts with the forum state," and determine whether those contacts

> (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum.

*Id.* at 1357 (citing *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)). The court in *Louis Vuitton* found all three prongs of minimum contacts test satisfied where a nonresident defendant "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website," on which he sold counterfeit products. *Id.* The defendant "received orders from multiple Florida residents to ship goods into Florida," and "shipped those goods . . . into Florida." *Id.* The court specified that it was not holding "that the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed." *Id.* (emphasis in original). Rather, it found the test was satisfied because in addition to offering an interactive website in available Florida, the defendant "[sold] and distribut[ed] infringing goods through his website to Florida consumers—*and the cause of action here derives directly from those contacts*." *Id.* at 1358 (emphasis in original).

The record before the Court establishes that Jiayi has "purposefully availed" itself of the privilege of doing business in Florida under the minimum contacts test. *Id.* at 1355. This case is on all fours with *Louis Vuitton*. The core of Tencent's claims is that Jiayi traffics in pirated Tencent content. And the record shows Jiayi has built a business doing just that in Florida—both by selling ad space visible to Florida residents and by selling premium subscriptions to U.S. consumers, including Florida residents. *Id.* at 1357 (citing *Carrillo*, 115 F.3d at 1542); *see* [Compl. ¶ 14–15, 20; Buckner Decl. ¶ 3; Wang Objection Decl. ¶ 2]. Importantly, Jiayi is not the proverbial "retiree in Maine who starts a one-man business" online, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366 n.4 (2021), but a sophisticated company running interactive websites that have garnered as many as 123,400 visits from Florida users in a single month, [*e.g.*, Compl. ¶ 74; Wang Objection Decl. ¶ 2]. The only differences between this case and *Louis Vuitton* are that Jiayi is selling a digital, rather than physical, product, and that some of Jiayi's revenue comes from Florida residents viewing ads, rather than direct sales. The Court sees no reason those differences should change the result. *See Patt v. Volkswagen Grp.*

*of Am., Inc.*, 688 F. Supp. 3d 1186, 1193 (S.D. Fla. 2023) (Bloom, J.) ("The Due Process Clause is not violated when a forum state 'asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased.'") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 2014 WL 11880964, at *8 (S.D. Fla. Jan. 24, 2014) (Moore, J.) ("[A] retailer whose products are marketed and sold in Florida should anticipate the possibility of being haled into court here").

3. Prong Three: "Fair Play and Substantial Justice"

The last question is whether the exercise of personal jurisdiction over Jiayi would comport with traditional notions of fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Under this prong, the Court considers (1) "the burden on the defendant"; (2) "the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute." *Lovelady*, 544 F.3d at 1288.

Jiayi has the burden on this question and does not carry it. First, nothing in the factual record suggests Jiayi would be substantially burdened by having to litigate this case here; indeed, "modern methods of transportation and communication reduce this burden significantly." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (citation omitted). Second, "the United States certainly has an interest in upholding federal copyright laws," and the state of Florida "has an interest in protecting its consumers against the solicitation of infringing goods." *Ross v. Archer Publications Ltd.*, 2025 WL 253415, at *7 (S.D. Fla. Jan. 21, 2025) (Altonaga, C.J.) (internal quotation marks and citations omitted). Third, Tencent has an interest in obtaining convenient and effective relief against a company that—according to the allegations in the complaint—has cost Tencent substantial revenue. [*See, e.g.*, Compl. ¶ 66 ("[Jiayi's] websites include full-length copies of Tencent content, including the Tencent Exclusive Shows. This content includes newly released movies, archived movies, and television show

episodes—all available at the click of a button and often made available immediately after the original premiere.")]. And fourth, this Court has an interest in efficiently resolving a dispute that has now been pending for almost a year. *See Louis Vuitton*, 736 F.3d at 1358 ("The judiciary has an interest in efficiently resolving the dispute in the forum where an extensive record was established and the case was long pending.").

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The R&R **[ECF No. 31]** is **REJECTED**.
2. Jiayi's Motion to Dismiss **[ECF No. 25]** is **DENIED**.
3. Jiayi must file an answer to the complaint [ECF No. 1] within fourteen (14) days of the date of this Order.

**DONE AND ORDERED** in the Southern District of Florida on September 18, 2026.

**DAVID S. LEIBOWITZ**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record